1   BABACH LAU, ESQ. (SBN: 117248)
    LAW OFFICES OF BOBBY LAU
2   75 E. Santa Clara Street, Suite 295
    San Jose, CA 95113
3   Telephone: (408) 295-3330
    Facsimile:  (408) 295-9830
4
    Specially Appearing as Attorney for Defendant
5   CHEMACOUSTIC TECHNOLOGIES INC.

6   TIMOTHY GENS
    8350 West Addison Avenue
7   Chicago, IL 60634
    Specially Appearing In Pro Per
8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11  PLASPRO GMBH,                    CASE NO.  C09 04302 RS

12              Plaintiff,           **Date of Hearing: TBD on submission**

13      v.                           **Time of Hearing: TBD on submission**

14  TIMOTHY GENS, CHEMACOUSTIC       **Courtroom:  TBD**
    TECHNOLOGIES INC., ET AL.
15                                   **DECLARATION OF TIMOTHY GENS TO**
                Defendants.          **SUPPORT THE SUPPLEMENTAL**
16                                   **MEMORANDUM**

17

18

19

20

21  I, Timothy Gens, do hereby state by as an individual and as President of ChemAcoustic

22  Technologies Inc. (CAT):

23      1. In 2006, my father was diagnosed with terminal cancer.   My mother and father lived

24  together in Chicago IL and were both in their late eighties.  It was my parents' desire for my

25  father to live out his days at home as opposed to assisted living or hospice care.  I took

26  responsibility for providing personal care as my father became bedridden.

27      2. Since I still had two of my four children in the Palo Alto school district, I transferred

28

the ownership of his former residence in CA to my wife and the children continued attending their respective schools.  I then split my time between my residence in Wisconsin and my parents' residence in Chicago which was within commuting distance of each other.

3.  My father died at his home in November.  Shortly thereafter, my mother was diagnosed with breast cancer.  She is currently undergoing chemotherapy treatments at Resurrection Hospital in a suburb of Chicago while continuing to live at her home in Chicago. I continue to provide personal care for my mother.

4.  CAT has never sold any product for use in California.

5.  CAT targets no print, television, or radio advertising for its products in California and does not advertise its products through internet search engines or other internet websites.

6.  The website for CAT is completely passive.

7.  CAT has never designated an agent for service of process in California.

8.  CAT has never been incorporated or licensed in California.

9.  CAT has purchased the following percentages of sales from vendors residing in California:  4.3% in 2007; 4.8% in 2008; 0.0% in 2009 and 0.0% to date in 2010.

10.  CAT performed no demonstrations of its customer's products in California in 2008, 2009, or to date in 2010.

11  CAT pays no taxes in California in 2007, 2008, 2009, and to date in 2010.

12.  CAT maintains no bank accounts in California.

13.  CAT has had no employees in California during 2007, 2008, 2009, and to date in 2010.

14.  CAT had an independent contractor residing in California during 2007 through the first half of 2008 which represented less than 8% of its workforce.  Since May of 2008, CAT has had no independent contractors residing in California.

15.  Gens has no professional licenses in California.

16.  Since 2006, Gens has had only one active lawsuit in California, a malpractice/ fraud suit pending against his attorneys who represented him in 2004-2006, in the Superior Court of Santa Clara County.  Gens is represented by M. Matthews of Chapman Popik and White.  Gens

[2]

has never had to appear in California for this lawsuit and no appearance is scheduled.  All matters are handled by Mr. Matthews.

17.  There is no California choice of law and forum provision in any agreement between Plaintiff and Defendants.  There were no parts purchase in California, or anywhere else, for the alleged agreement between Plaintiff and Defendants.  There were no contacts between Defendants and Plaintiff in California after 2007.

18.  The books and records of the CAT are in Illinois and Wisconsin.

19.  CAT employed three independent contractor engineers through the end of 2009 at its Nevada location in Las Vegas.

20.  CAT manufactured tools and tested these tools in the states of OK, IL, NV, WI, and WA from 2006 through the present.

21.  CAT or I never had offices, a demo site, or any other manufacturing facility at a company called Pro Sys in Campbell CA or elsewhere in CA.

22.  I did meet Mr. Ford in 2007 at Pro Sys at his request and because Mr. Ford used to be a representative of Pro Sys in Europe.

23.  My wife, Laura Gens is the sole owner of the property in Palo Alto, Ca since 2006.  Although she has filed suit against the mortgage company, I have not appeared in that action and has visited his wife three times in 2010 in CA for morale support.  Laura Gens has engaged the advice of other attorneys in her suit.

24.  Mr. Ratra was an independent contractor through May of 2008. After which time he worked for Mr. Ford at Plaspro.

25.  Mr. Ratra never worked out of the house at 4141 Old Trace Road Palo Alto, CA.  Mr. Ratra's access to the property was limited to the assembly of product in a remote studio on the property in December of 2007

26.  Service work for Crystal Tech in Palo Alto, Ca was on equipment not built by CAT and constitutes less than 0.1% of Cat's sales in 2007.

27.  No dryers were ever sold to or for use by Wafer Process Systems in San Jose CA.

28.  Plastic Logic was never a customer of CAT.

[3]

29.  The clear majority, by either time or expense, of all testing of the inventions in the patent applications filed by CAT occurred in OK.

30.  I have never heard of any lawsuits filed against me in California.

I declare under penalty of perjury under the law of the State of California that the foregoing is true and correct.

/s/

Dated: May 21, 2010                          _____

Chicago, Illinois                                Timothy Gens

[4]