*E-Filed 07/28/2010*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PLASPRO GMBH,<br><br>    Plaintiff,<br>  v.<br><br>TIMOTHY GENS; and CHEMACOUSTIC TECHNOLOGIES, INC.,<br><br>    Defendants.<br>_____/ | No. C 09-04302 RS<br><br>**ORDER DENYING MOTION TO DISMISS** |

## I. INTRODUCTION

This is a case about an industrial dryer. Plaintiff Plaspro GmbH ("Plaspro") sued defendants Chemacoustic Technologies, Inc. ("CTI") and Timothy Gens ("Gens"), CTI's president, in state court for breach of contract and fraud stemming from defendants' alleged failure to deliver a cleaner/dryer system pursuant to the parties' contract. Defendants removed the case to this Court and, on January 13, 2010, filed a motion to dismiss for lack of personal jurisdiction, insufficient process and insufficient service of process pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(4) and 12(b)(5), respectively. On April 12, 2010 the Court authorized the parties to conduct limited discovery on the issue of personal jurisdiction. The parties have since done so, and have submitted supplemental briefing. For the reasons stated below, the motion to dismiss is denied.

## II. FACTUAL BACKGROUND

Plaspro, an international distribution and representation company serving the semiconductor industry, alleges that it brokered the purchase of a cleaner/dryer system from defendants on December 20, 2007, that it paid $108,500.00 as a down payment, and that defendants failed to deliver the dryer to PlasticLogic GmbH, the third-party end user, by May 2008 as promised. Plaspro sued Gens and CTI on October 23, 2008 in Santa Clara County Superior Court for breach of contract, breach of the covenant of good faith, fraud, and rescission based on fraud. On February 18, 2009, Gens filed a motion to quash service of summons in the state court action on behalf of himself and CTI. The state court granted the motion to quash as to Gens and denied it as to CTI. RJN in Opp'n Exh. 5.[1] Plaspro later obtained an order for publication of summons from the Santa Clara County Superior Court, and published summons in the San Jose Mercury News. *Id*. Defendants again filed a motion to quash service of summons, and on August 25, 2009 the motion was denied in its entirety. *Id*., Exh. 3.[2]

CTI was originally incorporated in Nevada on November 17, 2003, but has since had its corporate status revoked. Decl. of Harris ISO Supplemental Br. in Opp'n, Exh. A. According to Jagjit Ratra, a Vice President of Engineering for CTI from March 2004 through July 2008 who was involved in the design, manufacture and delivery of the cleaner/dryer system ordered by Plaspro, CTI conducted a significant portion of its operations in California. Decl. of Ratra ISO Supplemental Br. in Opp'n at ¶¶ 4-7. Ratra testified that he was CTI's only employee, and that he generally

---

[1] Plaspro asks the Court to take judicial notice of several pleadings and orders filed in the state court action, including those relating to the motion to quash service. Pursuant to Federal Rule of Evidence 201(b), the Court takes judicial notice of the following court filings: (1) Order re: Motion to Quash Service of Summons; Motion to Quash Service of Summons and Notice of the Writ of Attachment; Motion for Sanctions Under CCP § 128.7 issued by the Superior Court of California, County of Santa Clara on August 26, 2009 in case number 1-08-CV-126129; (2) Order re: Motion to Quash Service of Summons Notice of the Writ of Attachment issued by the Superior Court of California, County of Santa Clara on March 13, 2009 in case number 1-08-CV-126129; (3) Notice of and Motion by Defendants Timothy Gens and Chemacoustic Technologies, Inc. to Quash Service of Summons filed in the Superior Court of California, County of Santa Clara on January 23, 2008 in case number 1-08-CV-126129; (4) Complaint of Plaintiffs Timothy and Laura Gens in case number CIV464453 filed in Superior Court of California, County of San Mateo on July 13, 2007; and (5) Complaint of Timothy Gens filed in case number 107CV090225 in Superior Court of California, County of Santa Clara on July 19, 2007. As to any other requests, the motion is denied.

[2] The state court evaluated defendants' motion to quash service based upon the same extensive record that has been presented here. Relying on this record, the state court deemed Plaspro's publication of summons appropriate and denied the motion to quash. Similarly, Plaspro's process and service of process satisfied the Federal Rules of Civil Procedure, and defendants motion to dismiss is denied to the extent it is based upon Rule 12(b)(4) or Rule 12(b)(5).

worked for CTI out of one of three locations; his home in Campbell, California, the Gens home in Palo Alto, California,[3] or the Pro Sys, Inc. offices in Campbell, California. *Id*. at ¶ 4.  A copy of a 2006 W-2 Ratra received while working for CTI lists the company's address as P.O. Box 61029, Palo Alto, CA 94306.  *Id*, Exh. A.  Ratra further acknowledged that his CTI business cards listed the company's address as "Chemacoustic Technologies, Inc., Silicon Valley Research Center, 4546 B10 El Camino Real, Suite 385, Los Altos, CA 94022," and that the additional company address in Incline Village, Nevada was simply a mail forwarding address.  *Id*. at ¶¶ 2-3.  In his declaration, Gens claims that Ratra was an independent contractor who stopped working for CTI in May of 2008, and who represented less than 8% of CTI's workforce.  Decl. of Gens to Supp. Supplemental Mem. at ¶¶ 14, 24.  Gens also testified that CTI had no employees in California between 2007 and 2010 and that CTI employed three independent contractor engineers through the end of 2009 at its Nevada location in Las Vegas.  *Id*. at ¶¶ 13, 19.  Gens, however, provides no address in Las Vegas nor any names or additional evidence for the three independent contractors.  Gens goes on in his declaration to maintain that Ratra never worked out of the Palo Alto house, and that his "access to the property was limited to the assembly of product in a remote studio on the property in December of 2007."  *Id*. at ¶ 25.

Ratra also testified that, during the time he worked for CTI, the company built all of its products and tools, including the cleaner/dryer ordered by Plaspro in 2007, in California.  Decl. of Ratra ISO Supplemental Br. in Opp'n at ¶ 5.  Additionally, according to Ratra, CTI purchased materials from numerous suppliers in California, and Gens and Ratra regularly met with clients and potential customers in this state.  *Id.* at ¶¶ 4, 6.  Ratra lists eleven California vendors from whom CTI allegedly purchased parts and materials.  *Id*. at ¶ 6.  Ratra also lists a number of meetings in California that he and Gens had with individuals involved in the Plaspro agreement; prior to 2007 they met with Maurice Ford, Plaspro's owner and president, at the Pro Sys office to discuss an earlier transaction, and in late 2007 they met with Peter Kember, a PlasticLogic representative, at a

---

[3] Gens states that his wife, Laura Gens, is the sole owner of the property in Palo Alto, CA since 2006.  Decl. of Gens to Supp. Supplemental Mem. at ¶ 23.  During his deposition, Gens had some difficulty remembering whether he had been to the Palo Alto residence the week prior, but recalled that he had been there as recently as February 22, 2010.  Decl. of Harris ISO Supplemental Br. in Opp'n, Exh. E.

3

hotel in San Francisco to review conceptual designs for the cleaner/dryer.[4]  *Id*. at ¶¶ 7-8.  In fact, according to Ratra's testimony, all communications regarding the Plaspro order took place in California, as did all of the design work that was done for the cleaner/dryer.  *Id*. at ¶ 8.  In his declaration, Gens disputes Ratra's testimony, and maintains that less than 5% of CTI's sales were from California vendors in 2007, that it had no offices at Pro Sys, that it performed no demonstrations in California from 2008-2010, and that it manufactured its tools "in the states of OK, IL, NV, WI, and WA."  Decl. of Gens to Supp. Supplemental Mem. at ¶¶ 4, 9, 20, 21.  Gens does not, however, dispute that he met with Ford at the Semicon West convention, that he met with Kember in San Francisco, or that the design work and negotiations for the cleaner/dryer took place in California.

Other general allegations that Plaspro makes regarding CTI's contacts with California include: that CTI advertised on its website, business cards, customer invoices, email signature blocks and other miscellaneous documentation that it had a research center located in Los Altos; that in his capacity at CTI, Gens advertised and received phone calls to numbers with area codes assigned to geographic areas that include Los Altos and Palo Alto; and that, other than being originally incorporated in Nevada and maintaining a bank account at the Wells Fargo Bank in Incline Village, CTI conducted all its substantive activities in and around Palo Alto, Los Altos, and Campbell, California.  Decl. of Ratra ISO Supplemental Br. in Opp'n at ¶¶ 2-4; Decl. of Ford ISO Supplemental Br. in Opp'n at ¶¶ 14, 15.  Gens testifies in his declaration that CTI's website is passive, that it never advertised in California, that it has never designated an agent for service of process in this state, that it has never been incorporated or licensed in California, and that it maintains no bank accounts here.  Decl. of Gens to Supp. Supplemental Mem. at ¶¶ 3-9.

As to Gens specifically, Plaspro alleges that he has had substantial, continuous, and systematic contact with California dating back to at least 1994.  In support of this, Plaspro maintains that Gens resided in California from 1994 until at least 2006, when he transferred the ownership of his Palo Alto home to his wife.  Decl. of Harris ISO Supplemental Br. in Opp'n, Exh. E.  Gens does

---

[4] Ford testifies that he met Gens at the Semicon West convention at the Moscone Center in San Francisco in July 2008, at which point Gens confirmed that he would be unable to deliver the cleaner/dryer as promised.  Decl. of Ford ISO Supplemental Br. in Opp'n at ¶ 4.  Ford also testifies that Gens sent him emails discussing the possibility of demonstrating the product in California.  *Id.* at ¶ 13.

4

1  not dispute this fact.  Decl. of Gens to Supp. Supplemental Mem. at ¶ 23.  During this time, Plaspro
2  maintains, Gens consistently worked in California; he was employed with various law firms from
3  1994 until founding CTI in 2003, and from sometime after 2006 until around January 2009 worked
4  in Mountain View, California at Vello Corporation as a Vice President of Corporate Development.
5  Decl. of Harris ISO Supplemental Br. in Opp'n, Exh. C.[5]  Additionally, Plaspro avers that Gens has
6  a long history through to the present of availing himself of the judicial system in California.
7  According to court filings submitted for judicial notice by Plaspro, as of December 2007, Gens was
8  a plaintiff in at least two open cases in California; one still pending in Santa Clara County Superior
9  Court that was filed on July 19, 2007, and a San Mateo County Superior Court action that was filed
10 on July 13, 2007 and closed on March 26, 2010.  RJN ISO Supplemental Br. in Opp'n, Exhs. I, J.
11 Gens has represented himself *in pro per* in both these cases, and in each complaint alleged that he
12 resided in Santa Clara County, California as of the date of filing.  *Id*.  Lastly, Plaspro avers that
13 Gens, who is a member of the Illinois Bar Association, lists his registered business address with the
14 Attorney Registration & Disciplinary Commission of the Supreme Court of Illinois as Palo Alto,
15 California, that he has a valid California driver's license, and that he and Ratra are co-inventors of a
16 patent application that lists Gens' correspondence address as Palo Alto, California.  Decl. of Harris
17 ISO Supplemental Br. in Opp'n, Exhs. D, E; Decl. of Ratra ISO Supplemental Br. in Opp'n, Exh. C.

18                            III. LEGAL STANDARDS

19        A defendant may properly bring a motion to dismiss for lack of personal jurisdiction.  *See*
20 Fed. R. Civ. P. 12(b)(2).  Personal jurisdiction can arise from two separate premises, commonly
21 known as general jurisdiction and specific jurisdiction.  "General jurisdiction refers to jurisdiction to
22 adjudicate claims that do not arise from the defendant's contacts with the forum state.  Thus, if a
23 defendant is amendable to general jurisdiction in a state, the state may exercise jurisdiction over the
24 defendant based on any claim, including claims unrelated to the defendant's contacts with the state."
25 *Coremetrics, Inc. v. Atomic Park.com, LLC*, 370 F. Supp. 2d 1013, 1016 (N.D. Cal. 2005) (citations
26 omitted); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).
27 "The standard for establishing general jurisdiction is 'fairly high,' and requires that the defendant's

---

[5] According to the motion to quash service of summons filed by defendants in Santa Clara County Superior Court, Gens was laid off from Vello Corporation at the end of September 2008.  RJN ISO Supplemental Br. in Opp'n, Exh. P.

*United States District Court*
For the Northern District of California

contacts be of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986)). In determining general jurisdiction, courts look for "substantial" or "continuous and systematic contacts" with the forum state, and take into account "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds licenses, or is incorporated there." *Id.* The focus is on the "economic reality of [a defendant's] activities rather than a mechanical checklist," *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984) (citations omitted), and "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such a presence." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006). Additionally, the assertion of general jurisdiction, even where continuous and systematic contacts exist, must be reasonable. *See Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 852-853 (9th Cir. 1993)

Where a defendant's contacts with the forum state are insufficient to warrant general jurisdiction, specific jurisdiction may exist if the defendant had sufficient minimum contacts with the forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1946). This analysis looks at the relationship between the forum and the claim, and in the Ninth Circuit involves a three-part test. *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). The first step is to determine whether the nonresident defendant has done "some act or consummate[d] some transaction with the forum[,] or perform[ed] some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum." *Id.*, 65 F.3d at 1498 (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995)). The second step asks whether "the claim [is] one which arises out of or results from the defendant's forum-related activities." *Id.* The final inquiry is to determine if the exercise of jurisdiction is reasonable. *Id.* Reasonableness, and fairness, requires that a court exercise jurisdiction only if the defendant's actions in the forum are such that "he should reasonably anticipate being haled into court there." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

If personal jurisdiction is challenged, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. *See Doe I v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). However, if a court rules on a defendant's motion to dismiss for lack of jurisdiction without holding an evidentiary hearing, such as here, the plaintiff need only make a prima facie showing of jurisdiction to avoid dismissal. *Id*. A prima facie showing requires only that the plaintiff present facts which, if true, establish jurisdiction. *Id*. (citing *Ballard*, 65 F.3d at 1498). Moreover, "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Id*. (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

## IV. ANALYSIS

A. <u>Specific Jurisdiction</u>

Applying the three-part test from *Ballard*, the Court first looks at whether CTI and Gens purposefully availed themselves of "the benefit and privilege of conducting activities" in California. 65 F.3d at 1498. Determining whether a defendant purposefully availed itself of the forum requires a "qualitative evaluation of the defendant's contact with the forum state." *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). As long as a defendant's contact creates a "substantial connection" with the forum, even a single act can support jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). In evaluating whether the existence of a contract establishes purposeful availment, a court must examine the circumstances surrounding the contract, including "prior negotiations[,] contemplated future consequences…, the terms of the contract, and the parties' actual course of dealing." *Id*. at 479. Evidence of the defendant's actions in the forum, such as negotiating, executing or performing a contract there, frequently qualify as an invocation of the forum's benefits and protections. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801, 802 (9th cir. 2004).

Here, based on the evidence submitted with the supplemental briefing, defendants at least partly negotiated, executed, and performed the contract in connection with the Plaspro purchase order in California. Indeed, according to Ratra, the employee closest to the transaction, all communications regarding the Plaspro order took place in California, as did all of the design work that was done for the cleaner/dryer: Gens and Ratra met with Ford in Campbell, California to

7

1   discuss CTI products; Gens and Ratra met with Kember in San Francisco to review conceptual
2   designs for the cleaner/dryer; Gens discussed with Ford the possibility of demonstrating the product
3   in California; and Gens ultimately informed Ford that CTI would be unable to deliver the
4   cleaner/dryer while the two were at the Semicon West convention in San Francisco.  Although Gens
5   submits a declaration that purports to contradict certain representations made by Plaspro, the Court
6   need not parse out Gens' declaration to determine which portions conflict with the evidence
7   submitted by plaintiff, or to evaluate whether Gens' statements reveal any inconsistencies, because
8   conflicts between the facts presented by the parties must be resolved in plaintiff's favor.  *See*
9   *Compagnie Bruxelles Lambert*, 94 F.3d at 588.[6]  Looking at the evidence in the light most favorable
10  to plaintiff, CTI and Gens both availed themselves of this forum by negotiating a contract whose
11  performance was centered in California.  In other words, defendants' actions created a substantial
12  connection with California, and Plaspro has satisfied the first part of the *Ballard* test.

13       Applying the second step in the *Ballard* analysis, it is without question that Plaspro's lawsuit
14  arose out of the defendants' forum-related activities.  65 F.3d at 1498.  Indeed, Plaspro is suing
15  based upon the alleged breach of an agreement that was negotiated in California for a product that
16  was to be built and tested here.  Again, resolving any conflicts in the evidence in plaintiff's favor as
17  required, testimony from Ford and Ratra shows that this action arose out of the very activities that
18  established minimum contacts; CTI's initial contract negotiations, products consultations, design
19  work and manufacture all either happened, or in the case of the latter, were anticipated to happen in
20  California.

21       Finally, as to the third prong of the *Ballard* test, once a plaintiff establishes that a defendant
22  has purposefully availed itself of the forum and that the action arose out of these forum-related
23  activities, the defendant bears the burden of showing that the exercise of personal jurisdiction would
24  still be unreasonable.  *Fred Martin Motor Co.*, 374 F.3d at 802; *see also Roth v. Garcia Marquez*,
25  942 F.2d 617, 625 (9th Cir. 1991) ("Once purposeful availment has been established, the forum's

---

[6] For instance, Gens says in his declaration that CTI "never sold any product for use in California," that it had no offices "at a company called Pro Sys in Campbell, CA," that it manufactured its tools "in the states of OK, IL, NV, WI, and WA," and that "[t]here were no contacts between [CTI or Gens] and [Plaspro] in California after 2007."  Decl. of Gens to Supp. Supplemental Mem. at ¶¶ 4, 9, 17, 20, 21.  Gens does not, however, state affirmatively that none of the manufacturing was conducted in California, nor does he dispute the testimony from Ford and Ratra that the negotiations leading up to the alleged Plaspro agreement took place in California.

exercise of jurisdiction is *presumptively reasonable*. To rebut that presumption, a defendant 'must present a *compelling* case' that the exercise of jurisdiction would, in fact, be unreasonable." (emphasis in original) (citations omitted)) The Ninth Circuit balances several factors in its reasonableness inquiry, including: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden of defending in the forum state; (3) the extent of the conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Burger King Corp*, 471 U.S. at 476; *see also, Bancroft & Masters*, 223 F.3d at 1088.

Defendants argue that invoking personal jurisdiction in California would be unreasonable because CTI's documents are located in Illinois and Wisconsin, where Gens allegedly spends most of his time, because California has no interest in the suit, and because other fora are available. These contentions, however, are unavailing. As to CTI's documents, defendants bring forward no explanation as to why those documents relating to the alleged Plaspro agreement could not easily be transported to California. Similarly, the fact that Gens spends significant time outside of California is not dispositive, particularly given that his wife has a residence in Palo Alto, where he has stayed as recently as February 2010, and given that he is a plaintiff in two pending lawsuits in California state courts where he has alleged residence in Santa Clara. Moreover, CTI's assertion that other fora are available is weak in the face of California's interest in presiding over, and applying its contract law to, a disputed agreement alleged to have been entered into here. Accordingly, the exercise of personal jurisdiction over CTI is not unreasonable; indeed it is eminently reasonable, and foreseeable, that defendants would anticipate being haled into court in California based upon their contacts with the state during the negotiation and execution of the Plaspro agreement. Having satisfied the three prongs of the *Ballard* test, then, Plaspro has established a prima facie basis for specific jurisdiction over CTI and Gens.[7]

B. General Jurisdiction

---

[7] Although Gens' California-based contacts with Plaspro were solely in his capacity as president of CTI, he is subject to specific jurisdiction in the state based on those contacts. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) (holding that an employee's status as an employee will not insulate him from jurisdiction because "[e]ach defendant's contacts with the forum State must be assessed individually.")

9

In addition to establishing a basis for specific jurisdiction, Plaspro has presented sufficient facts demonstrating a prima facie basis for general jurisdiction over both Gens and CTI as well. Although the standard for general jurisdiction is high, defendants' continuous, systematic and substantial activities within California suggest an "economic reality" that approximates "physical presence" in the forum. *See Bancroft & Masters, Inc.*, 223 F.3d at 1086. These actions, which are considered in their totality, include: (1) CTI has been in existence, and has conducted all of its substantive activities in California, since 2003; (2) CTI purchased significant inventory from vendors in California; (3) Gens and Ratra attended tradeshows and meetings with potential and current customers in California; (4) CTI advertised a California address on its website and in its promotional materials, such as business cards; (5) CTI solicited sales and negotiated agreements in California; (6) CTI tested, manufactured and sold its products in this state; (7) Ratra, CTI's Vice President of Engineering, worked primarily in California; (8) Gens has been steadily employed in California since 1994, including with Vello Corporation in Mountain View since sometime after 2006 until at least September 2008; (9) Gens has filed a number of lawsuits in California, and has stated in the requisite pleadings that he resides in Santa Clara; (10) Gens has a valid California driver's license; (11) Gens lists his registered address with the Supreme Court of Illinois as Palo Alto; and (12) Gens' address on his patent application is similarly listed as Palo Alto.

Again, although Gens disputes certain of Plaspro's representations, when the Court resolves any conflicts as to the facts in Plaspro's favor and views the evidence most favorably to plaintiff, it is clear that Gens and CTI both demonstrated the "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets" that are indicative of presence in a forum for the purpose of general jurisdiction. *See Tuazon*, 433 F.3d at 1172. Indeed, as with the specific jurisdiction analysis, it is eminently reasonable, and foreseeable, for both Gens and CTI to anticipate being haled into court in California. Simply put, Plaspro has presented sufficient evidence to establish a prima facie basis for general jurisdiction over Gens and CTI in California. Defendants' motion to dismiss for lack of personal jurisdiction, then, must be denied.

## V. CONCLUSION

For the reasons stated above, defendants' motion to dismiss is denied.

IT IS SO ORDERED.

Dated: 07/28/2010

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

**THIS IS TO CERTIFY THAT NOTICE OF THIS DOCUMENT WAS ELECTRONICALLY PROVIDED TO:**

David S. Harris                    dsh@northbaylawgroup.com

**AND A HARD COPY OF THIS ORDER WAS MAILED TO:**

Timothy Gens
8350 West Addison Avenue
Chicago, IL 60634

Babach Lau
Law Offices of Bobby Lau
75 E. Santa Clara Street
Suite 295
San Jose, CA 95113

Dated: 07/28/2010                    /s/ Chambers Staff
                                     Chambers of Magistrate Judge Richard Seeborg

**United States District Court**
For the Northern District of California