1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12

| | |
|---|---|
| PLASPRO GMBH,                             ) | Case No.: C 09-04302 PSG |
|                         Plaintiff,          ) | **ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS;** |
|      v.                                      ) | **ORDER DENYING MOTION TO STRIKE** |
| TIMOTHY GENS, ET AL.                       ) | (Docket Nos. 90, 92) |
|                      Defendants.      ) | |

13

14

15

16

17

18

19

20        Defendants Timothy Gens ("Gens") and Chemacoustic Technologies, Inc. ("CTI") move

21  to dismiss the complaint pursuant to Fed. R. Civ. P 12(b)(6) and also move to strike certain

22  statements alleged in the complaint pursuant to Fed. R. Civ. P. 12(f).  Plaintiff PlasPro GMBH

23  ("PlasPro") opposes both motions.  On February 15, 2011, the parties appeared for hearing.

24  Having reviewed the papers and considered the arguments of counsel, Defendants' motion to

25  dismiss is GRANTED-IN-PART and DENIED-IN-PART and Defendants' motion to strike is

26  DENIED.

27

28

# I. BACKGROUND

PlasPro is an international distribution and representation company that provides equipment and services in the semiconductor equipment industry.[1]  CTI, now located in Wisconsin, manufactures and sells cleaning and drying systems for substrate and material surfaces to the semiconductor industry.[2]  Gens is CTI's alter ego.[3]

On or about December 20, 2007, PlasPro issued a purchase order ("PO") for a custom-designed two station mask cleaner and dryer ("Cleaner-Dryer") from CTI.[4]  PlasPro intended, and CTI knew that PlasPro sought, to re-sell the Cleaner-Dryer to another company named Plastic Logic GmbH located in Dresden, Germany.[5]  The PO set forth a total purchase price of $217,000 for the Cleaner-Dryer, and included the following payment terms: (1) a down payment of 40 percent or $86,800 due upon order; (2) a second payment of 50 percent or $108,500 due upon shipment; and (3) a third payment of 10 percent or $21,700 due upon acceptance of the Cleaner-Dryer.  The PO also noted a requirement date of May 30, 2008 for the Cleaner-Dryer .[6]

After PlasPro issued the PO, Gens requested that PlasPro increase the down payment to 50 percent of the purchase price or $108,500.  CTI then issued an invoice dated January 15, 2008 to reflect Gens' request.  ("Invoice").  On January 18, 2008, PlasPro wired a down payment in the amount of $108,500 to CTI's bank account.[7]

---

[1]    Compl. ¶ 3 (Docket No. 1).

[2]    *Id.* ¶ 4.  Further background on CTI's corporate history are provided in Judge Seeborg's July 28, 2011 Order Denying Motion to Dismiss (Docket #57).

[3]    *Id.* ¶ 5.

[4]    *Id.* ¶ 8.

[5]    *Id.* ¶ 9.

[6]    *Id.* Ex. A.

[7]    *Id.* ¶ 10.

After CTI repeatedly delayed the design and manufacture of the Cleaner-Dryer, PlasPro grew concerned that it would not receive the Cleaner-Dryer as promised.  On March 20, 2008, CTI, PlasPro, and Plastic Logic met to discuss the numerous delays.  CTI assured PlasPro and Plastic Logic that it would deliver the Cleaner-Dryer on a modified and delayed schedule.  The parties then agreed to modify the schedule for the design, testing, shipping, and installation of the Cleaner-Dryer.[8]

Despite its assurances, however, CTI again failed to meet its deadlines.  In June 2008, Gens again sought to extend the shipping date for the Cleaner-Dryer because CTI was having difficulty coordinating with its third-party system fabricator.  The third-party system fabricator refused to do any further work for CTI because CTI had failed to pay for work completed on other unrelated projects.[9]

CTI never delivered the Cleaner-Dryer to Plastic Logic.  Instead, PlasPro was forced to locate another company to design and manufacture a cleaner-dryer for Plastic Logic at a much higher price.[10]

On October 24, 2008, PlasPro filed a complaint alleging claims for breach of contract, fraud, breach of the covenant of good faith and fair dealing, and rescission based on fraud in Santa Clara Superior Court.  On September 16, 2009, CTI and Gens removed the case to federal court pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

## II.  LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[11]  While "detailed factual allegations are not required, a complaint

---

[8]  *Id.* ¶ 10.

[9]  *Id.* ¶ 13.

[10] *Id.* ¶ 15.

[11]  Fed. R. Civ. P. 8(a)(2).

must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[12]  In other words, a complaint must have sufficient factual allegations to "state a claim for relief that is plausible on its face."[13]  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14]  Accordingly, under Fed.R.Civ.P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[15]

When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[16]  Review of a motion to dismiss is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[17]  The court is not required to accept "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."[18]  Further, the court need not accept as true allegations that contradict matters that are either subject to judicial notice or attached as exhibits to the complaint.[19]

---

[12]    *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

[13]    *Id.* at 1940 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

[14]    *Id.* at 1940.

[15]    *Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).

[16]    *See Metzler Inv. GMBH v. Corinthian Colls, Inc.,* 540 F.3d 1049, 1061 (9th Cir. 2008).

[17]    *See id.* at 1061.

[18]    *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994).

[19]    *See In re Gilead Sciences Securities Litigation,* 536 F.3d 1049, 1055 (9th Cir. 2008).

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment."[20]  If dismissing with prejudice, a district court's failure to consider the factors relevant to whether amendment should be permitted and failure to articulate why dismissal should be with prejudice instead of without prejudice may constitute an abuse of discretion.[21]

Under Fed. R. Civ. P. 12(f), a party may move to strike "any redundant, immaterial, impertinent, or scandalous matter."[22]  This includes striking any part of the prayer for relief when the relief sought is not recoverable as a matter of law.[23]  The essential function of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."[24]

### III. DISCUSSION

**A.    Count One: Breach of Contract**

Defendants first challenge the sufficiency of PlasPro's claim for breach of contract.  To plead a claim for breach of contract, a plaintiff must allege, among other things, the existence of the contract.[25]  Defendants specifically dispute that, as pleaded, a contract even exists between PlasPro and CTI.  Defendants note a variety of differences in terms between the PO and Invoice, including the description of the Cleaner-Dryer, the shipping date, the invoice number and the

---

[20]    *Eminence Capital, LLC v. Asopeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).

[21]    *See id.* at 1052.

[22]    Fed. R. Civ. P. 12(f).

[23]    *See Rosales v. Citibank, Fed. Sav. Bank* 133 F. Supp 2d. 1177, 1180 (N.D. Cal. 2001).

[24]    *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds,* 510 U.S. 517 (1994).

[25]    *See Wall Street Network, Ltd v. New York Times, Co.,* 164 Cal.App.4th 1171, 1178, 80 Cal. Rptr.3d 6 (2008).

"ship-to" company.  The result, according to Defendants, is that whatever the terms outlined in the PO, they were later modified by the Invoice so as to "void" the existence of any contract.

As a preliminary matter, the court finds that California law applies not just to PlasPro's breach of contract claim, but each of PlasPro's claims.   Because jurisdiction is based on diversity jurisdiction, the court must apply California choice of law rules.  "It is well-settled that in diversity cases federal courts must apply the choice-of-law rules of the forum state."[26]  Under California choice-of-law rules, California state law applies, unless the parties raise an objection.[27]  None of the parties object to the application of California law, and in fact both raise arguments based exclusively on California state law.

Turning to the merits, the California Commercial Code ("CCC") governs the sale of goods, including specially manufactured goods, that are movable.[28]  Under the CCC, a contract for sale of goods may be made in any manner sufficient to show agreement.[29]  California law rejects the common-law  "mirror image" rule.[30]  Instead, when a commercial buyer and seller exchange conflicting forms, CCC Section 2207 controls,[31] and provides that "[a] definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."

---

[26]   *Estate of Darulis v. Garate,* 401 F.3d 1060, 1062 (9th Cir. 2005).

[27]   *See, e.g.,Hurtado v. Superior Court,* 11 Cal.3d 574, 580 (Cal. 1974).

[28]   *See* Cal.Comm.Code § 2105 (defining "goods" to include "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale.").

[29]   *See* U.C.C. § 2204(1).

[30]   *See Steiner v. Mobil Oil Corp.*, 20 Cal.3d 90, 99 (1977).

[31]   *See Textile Unlimited, Inc. v. A.,BMH and Co., Inc.*, 240 F.3d 781, 787 (9th Cir. 2001).

At bottom, "Section 2207 requires courts to put aside the formal and academic stereotypes of traditional doctrine of offer and acceptance and to analyze what really happens."[32] Here, even if the PO included additional and different terms compared to those in the Invoice, "what really happen[ed]" is that the Invoice operated as a "definite and seasonable expression of acceptance" by CTI of PlasPro's offer.[33]  Nothing in the invoice indicates any intent by CTI to condition its acceptance on assent to the any additional or different terms.  Defendants make no attempt in any of their papers to address the effect of Section 2207; indeed, Defendants do not even cite to this section of the CCC.  Defendants also do not dispute that PlasPro sufficiently alleges each of the other requirements of a breach of contract claim:  PlasPro's own performance (wiring of the down payment to CTI's bank account), Defendants' breach (failure to design, manufacture, and deliver the Cleaner-Dryer), and PlasPro's damages (the money to identify an alternate company and secure an alternative Cleaner-Dryer and additional incidental costs).  As a result, PlasPro has alleged facts sufficient to allege a claim for breach of contract, and Defendants' motion to dismiss the breach of contract claim is DENIED.

**B.      Count Two: Fraud**

Defendants next challenge the particularity with which PlasPro has pleaded its claim for fraud.  Defendants complain especially about the "lack of detail" and PlasPro's reliance on "just conclusions" in setting forth its alter-ego allegations.

 "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all elements of the cause of action."[34]  There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the

---

[32]      *Steiner*, 20 Cal. 3d at 100.

[33]      Because the issue is not presented, the Court expresses no view as to whether Gens also accepted the offer as a result of any "alter-ego" liability.

[34]      *Conrad v. Bank of America,* 45 Cal.App.4th 133, 156, 53 Cal.Rptr.2d 336 (1996). *See also Lazar v. Superior Court,* 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996) (setting forth the elements of a fraud claim under California law).

1  false representation" and "that the plaintiff actually and justifiably relied upon the defendant's

2  misrepresentation in acting to his detriment."[35]  "The absence of any one of these required

3  elements will preclude recovery."[36]

5       Fed. R. Civ. P. 9(b) requires a party to "state with particularity the circumstances

constituting fraud."[37]  In the Ninth Circuit, "claims for fraud and negligent misrepresentation

must meet Rule 9(b)'s particularity requirements."[38]  Rule 9(b) requires "specific" allegations of

fraud "to give defendants notice of the particular misconduct which is alleged to constitute the

fraud charged so that they can defend against the charge and not just deny that they have done

anything wrong."[39] "A pleading is sufficient under Rule 9(b) if it identifies the circumstances

constituting fraud so that the defendant can prepare an adequate answer from the allegations."[40]

As the Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances constituting
> fraud.  The time, place and content of an alleged misrepresentation may identify
> the statement or the omission complained of, but these circumstances do not
> "constitute" fraud.  The statement in question must be false to be fraudulent.
> Accordingly, our cases have consistently required that circumstances indicating
> falseness be set forth . . . [W]e [have] observed that plaintiff must include
> statements regarding the time, place, and nature of the alleged fraudulent
> activities, and that "mere conclusory allegations of fraud are insufficient." . . . The
> plaintiff must set forth what is false or misleading about a statement, and why it is

---

[35]   *See Conrad,* 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.

[36]   *Wilhelm v. Pray, Price, Williams & Russell,* 186 Cal.App.3d 1324, 1332, 231 Cal.Rptr. 355 (1986).

[37]   Fed. R. Civ. P. 9(b).

[38]   *Neilson v. Union Bank of California, N.A.,* 290 F.Supp.2d 1101, 1141 (C.D.Cal. 2003).

[39]   *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985).

[40]   *Neubronner v. Milken,* 6 F.3d 666, 671-672 (9th Cir. 1993) (internal citations omitted) (citing *Gottreich v. San Francisco Investment Corp.,* 552 F.2d 866 (9th Cir. 1977)).

false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading . . .[41]

A court may dismiss a claim grounded in fraud when its allegations fail to satisfy Rule 9(b)'s heightened pleading requirements.[42]

PlasPro alleges that Gens represented to it that upon receipt of a down payment totaling $108,500 from Plaspro, CTI would begin designing and manufacturing the Cleaner-Dryer.[43] Plaspro further alleges that Gens knew that such a representation was false because it has since learned that he used the down payment to complete other projects or to pay for his own personal costs and expenses.  These allegations, however, are not sufficient to establish a cause of action for fraud.  Absent a representation by Defendants that they would use the down payment specifically to fund design and manufacturing work on the Cleaner-Dryer, Defendants' use of the down payment toward other company projects in no way establishes that their representations that they would commence the design and manufacture of the Cleaner-Dryer were false, or that Defendants knew their representations were false.  Moreover, as owner of CTI, Gens presumably drew a salary from the company, and was free to use it to pay for his personal costs and expenses.  PlasPro has therefore not pleaded facts sufficient to support allegations of alter ego.[44]

Defendants' motion to dismiss the fraud claim is GRANTED with leave to amend.

## C.    Count Three: Breach of the Covenant of Good Faith and Fair Dealing

Defendants next challenge the sufficiency of PlasPro's claim for breach of the covenant

---

[41]    *In re GlenFed, Inc. Securities Litig.,* 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.,* 927 F.Supp. 1297 (C.D.Cal. 1996); *see Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *Neubronner,* 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity.").

[42]    *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1107 (9th Cir. 2003).

[43]    Compl. ¶10.

[44]    *See, e.g., id.* ¶ 6.

of good faith and fair dealing.  "A claim for breach of the implied covenant of good faith and fair dealing is an outgrowth of alleged improper conduct by a defendant under a contract between the parties, and is designed to prevent a party from acting in bad faith to frustrate the contract's actual benefits."[45]  Defendants' base their challenge on PlasPro's alleged failure to plead a contract.

As explained above, under CCC Section 2207, PlasPro has pleaded facts sufficient to establish a contract between the parties.  Because Defendants offer no basis for their challenge other than the absence of a contract, Defendants' motion to dismiss the claim for breach of the covenant of good faith and fair dealing is DENIED.

**D.      Count Four: Rescission Based on Fraud**

Defendants next challenge Plaspro's claim for rescission based on its underlying claim for fraud.  As explained above, Plaspro has not adequately pleaded a claim for fraud.  Therefore, any claim based on fraud, including rescission based on fraud, necessarily fails.  Defendants' motion to dismiss the claim for rescission based on fraud is therefore GRANTED with leave to amend.

**E.      Motion to Strike**

Defendants move to strike the following allegations from PlasPro's complaint for the reasons indicated:

1.      all allegations that Gens is the alter ego of CTI because the evidence is "impertinent and prejudicial;"

2.      all allegations that Plaspro has incurred incidental damages because such damages are not recoverable as a matter of law;

3.      the prayer for exemplary and punitive damages because exemplary and punitive damages are not available under a claim for breach of contract and breach of the covenant of good faith and fair dealing; and

4.      interest at the rate of ten percent per annum.

---

[45]      *See Guz v. Bechtel Nat'l Inc.,* 24 Cal.4th 317, 349 (2000).

1        In its opposition and at the hearing, PlasPro agreed to strike from the complaint the

2  request for attorneys' fees from its fraud claim.  It also agreed to strike the request for attorneys'

3  fees, exemplary and punitive damages from its breach of the covenant of good faith and fair

4  dealing claim.

5

6        Motions to strike are disfavored because they are often used as delaying tactics and

7  because of the limited importance of pleadings in federal practice.[46]  Motions to strike are

8  generally not granted unless it is clear that the matter sought to be stricken could have no

9  possible bearing on the subject matter of the litigation.[47]  Courts must view the pleading under

10  attack in the light most favorable to the pleader, treating as admitted all material facts alleged

11  and all reasonable presumptions that can be drawn therefrom.[48]

12        None of the allegations attacked by Defendants meet these high standards.  While

13  Defendants may dispute PlasPro's alter ego theory, that dispute alone does not render the alter

14  ego allegations impertinent or unduly prejudicial.  Under a breach of contract claim, Plaspro may

15  recover special damages that include incidental damages.  Finally, it is true that under California

16  law, exemplary and punitive damages are not available under a claim for breach of contract.  But

17  "where the gravamen of the action is not a breach of contract as such, but rather is the fraud

18  inherent in the breach, exemplary damages may be awarded."[49]  Because Plaspro's allegations

19  concerning the claim for fraud and breach of contract are identical, it appears that PlasPro seeks

20  to allege a degree of "fraud inherent in the breach" and that the gravamen of the claim lies in

21  tort.  As discussed above, PlasPro has been granted leave to amend the fraud claim.  Therefore,

22  except for PlasPro's agreement to strike from the complaint its request for attorneys' fees from

23

24             [46]    *See Rosales v. Citibank, Fed. Sav. Bank* 133 F. Supp 2d. at 1180.

25             [47]    *See LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal.

26  1992).

27             [48]    *See California v. United States*, 512 F. Supp. 36, 39 (N.D. Cal. 1981).

28             [49]    *See Brockway v. Heilman,* 250 Cal.App.2d 807, 812, 58 Cal.Rptr. 772

(Cal.Ct.App.1967).

1   the fraud claim and its request for attorneys' fees, exemplary and punitive damages for the

2   breach of the covenant of good faith and fair dealing claim, Defendants' motion to strike is

3   DENIED.

### IV.  CONCLUSION

Plaspro shall file an amended complaint no later than April 4, 2011.

Dated:   March 21, 2011

_____
PAUL S. GREWAL
United States Magistrate Judge

ORDER, *page 13*